IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIGITAL ALLY, INC,<br><br>Plaintiff,<br><br>v.<br><br>CULP MCAULEY, INC, et al.,<br><br>Defendants. | Case No. 2:22-cv-2203-HLT |

## ORDER

This case stems from a $4 million contract dispute between Plaintiff Digital Ally, Inc. and Defendant Culp McAuley, Inc. ("CMI"). Plaintiff also sued several individuals associated with the corporation. One of those individuals is CMI's attorney, Larry Roberts. Another is CMI's treasurer, Mark Depew. Plaintiff names Roberts and Depew in two counts of its second amended complaint. The first count is for fraudulent transfers under the Kansas Uniform Fraudulent Transfer Act ("KUFTA"), K.S.A. § 33-204 and § 33-205 (Count 8). The other is termed an "alter ego and/or corporate veil" claim (Count 9).

Roberts and Depew individually move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. Docs. 80, 83. The resolution of both motions has been complicated by the generalized nature of the filings in this case. The Court does not understand Count 9 to be a substantive claim for relief. Rather the Court understands Count 9 to be Plaintiff's theory for making Roberts and Depew subject to the personal jurisdiction of this Court and liable for the acts in Counts 1-8 attributable to CMI. *See Int'l Fin. Servs. Corp. v. Chromas Techs. Can., Inc.*, 356 F.3d 731, 736 (7th Cir. 2004) ("Piercing the corporate veil, after all, is not itself an action; it is merely a procedural means of allowing liability on a substantive claim, here breach of contract.").

The parties do not analyze this theory as to each individual claim and instead argue the issues globally.[1] The Court thus resolves the issues as briefed. The Court grants Roberts's motion because Plaintiff fails to meet its burden to show personal jurisdiction over him and does not reach his Rule 12(b)(6) arguments. But the Court denies Depew's motion because Plaintiff has shown a prima-facie case of jurisdiction over him and because Depew has not established that Plaintiff fails to state a claim.

I.   BACKGROUND

Plaintiff is a Nevada Corporation with its principal place of business in Kansas. Stan Ross is Plaintiff's CEO. CMI is a Wyoming corporation with its principal place of business in Wyoming. Its co-founders are Brandon Culp and Campbell McAuley. Roberts is CMI's incorporator and a citizen of California with a California law license. Depew is the registered agent and treasurer/fiscal agent of CMI and a citizen of Wyoming.

Plaintiff and CMI met via videoconference on August 31, 2021. Roberts, Depew, and other representatives of each entity participated. The parties had not yet entered a written agreement, but were speaking about a potential business venture involving personal protective equipment ("PPE"). CMI displayed a "read-only" version of an alleged contract between it and the federal government during the videoconference to demonstrate CMI's authority and ability to engage in a multi-million-dollar contract for PPE. There are no allegations that Roberts spoke or otherwise took any action during the meeting.

---

[1] They likewise give a cursory review to the choice-of-law issues potentially in play in this case. The parties don't meaningfully dispute that Kansas law is like Wyoming law. The Court thus declines to address choice of law in more detail than the parties did. *See Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 666-67 (D. Kan. 1999) ("The court is not obliged to investigate whether a conflict of law issue exists, when the parties present no conflict between the laws of potentially interested states."). But the Court notes that the choice-of-law issues may be more nuanced for aspects of this case. *See, e.g.*, *US Telecom, Inc. v. 535 Live, Inc.*, 1992 WL 151921, at *1-2 (discussing choice of law issues involving contract claims and alter-ego liability); *see also Blalock v. SRKBS Hotel, LLC*, 2023 WL 2734226, at *3 n.4 (D. Kan. 2023) (applying Kansas law to veil-piercing claims because the corporation was organized under Kansas law).

Plaintiff and CMI executed a term sheet for a potential venture less than a month later. The term sheet was followed by two purchase orders in which Plaintiff agreed to prepay for two separate orders of PPE. CMI was to procure the equipment. The parties agreed the prepaid funds would be deposited in two separate legal trust accounts owned and managed by Roberts. Both legal trust accounts were housed in banks with California addresses.

Roberts sent a November 5, 2021 email to Depew. The email related to the second purchase order. Roberts stated: "Here is the trust account for Stan for the Shield Gloves. This is a dedicated trust account that I will use only for Stan's production deal." The email then listed the legal trust account for the second transaction. Depew forwarded the message to Plaintiff so Plaintiff could prepay for the second order. Plaintiff deposited $1.5 million in the second legal trust account and roughly $2.5 million in the first.

Depew continued communicating by email with Plaintiff. He responded to various emails from Plaintiff about product shipping status on the following dates in 2022: January 29; February 11; March 8; March 9; and March 16. Depew participated in a conference call with Plaintiff on March 22 about the status of the purchase orders. Depew then continued updating Plaintiff by email about shipments on March 28, March 30, and April 4.

Plaintiff traveled to California warehouses in April 2022 to check the status and number of gloves in CMI's possession. During the visit, Roberts showed Plaintiff a document with General Services Administration ("GSA") letterhead as evidence of a federal contract.

Sixteen payments totaling $69,250 were made from the legal trust account for the first purchase order to Desert Prime LLC or referencing Desert Prime. Roberts is the registered agent of Desert Prime LLC, a California corporation. Plaintiff alleges on information and belief that Roberts exerts control over that entity. Two transfers of $20,000 apiece were made from the legal

3

trust account for the second purchase order to an unknown account operated by the Law Offices of Larry M. Roberts.

Payments totaling $581,300 were made out of the legal trust account for the first purchase order in connection with Aftermaster, Inc. Another $105,000 was paid to Aftermaster's counsel. Depew was Senior Vice President for Aftermaster. And another three payments totaling about $64,000 were made to Cowboy MD LLC. Plaintiff alleges on information and belief that Depew controls this Wyoming corporation.

## II. STANDARD

### A. Rule 12(b)(2)

Roberts and Depew each challenge the Court's personal jurisdiction over him. A plaintiff bears the burden to establish personal jurisdiction over each defendant. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). But the plaintiff need only make a prima-facie showing of personal jurisdiction when a court decides a Rule 12(b)(2) motion on the basis of affidavits and other written materials. Courts assume the allegations in the complaint to be true to the extent uncontradicted by the defendant's affidavits, and courts resolve all factual disputes in the plaintiff's favor. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

A plaintiff must satisfy both the state long-arm statute and constitutional due process to establish personal jurisdiction over a defendant. *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). But the Kansas long-arm statute reaches as far as federal due process will allow, which effectively narrows the issue to whether assertion of personal jurisdiction over the defendant would violate due process. *OMI Holdings*, 149 F.3d at 1090.

Due process allows a federal court to exercise personal jurisdiction over a non-resident defendant if there are "minimum contacts" between the defendant and the forum. *World-Wide*

4

*Volkswagen, Co. v. Woodson*, 444 U.S. 286, 291 (1980). The "minimum contacts" standard may be met in two ways: through specific personal jurisdiction or general personal jurisdiction. *OMI Holdings*, 149 F.3d at 1090-91. Plaintiff tacitly concedes that the Court lacks general personal jurisdiction over Roberts and Depew. The Court therefore focuses on specific personal jurisdiction.

Specific personal jurisdiction has two requirements. First, the defendant must have purposefully directed its activities at residents of the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the suit must arise out of the actions connecting the defendant with the forum. *Id.* If a plaintiff satisfies both requirements, a defendant can try to establish that exercising jurisdiction would violate traditional notions of fair play and substantial justice. *OMI Holdings*, 149 F.3d at 1091.

**B.     Rule 12(b)(6)**

Roberts and Depew alternatively argue that Plaintiff fails to state a claim. A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it contains sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted). A court undertaking this analysis accepts as true all well-pleaded allegations in the complaint but need not accept legal conclusions. *Id.* Likewise, conclusory statements are not entitled to the presumption of truth. *Id.* at 678-79.

### C. Piercing-the-Corporate-Veil Theory

A central issue to the motions to dismiss under both Rule 12(b)(2) and 12(b)(6) is whether the allegations in the Second Amended Complaint, taken as true, support piercing CMI's corporate veil thereby making Roberts and Depew subject to the jurisdiction of the Court and liable for the acts attributable to CMI. Roberts and Depew both argue that they have no personal contacts with the State of Kansas, which means that the Court does not have jurisdiction over them. They also argue that jurisdiction may not be exerted over them simply because of the positions they hold with CMI, which all parties seem to concede is subject to the personal jurisdiction of this Court.

The premise of piercing the corporate veil is that individuals may not insulate themselves from jurisdiction or liability by using the corporation as an instrumentality to conduct their own business. *Sampson v. Hunt*, 665 P.2d 743, 751 (Kan. 1983). This theory is most frequently used in the liability context, but Kansas courts consistently apply the concept to the personal-jurisdiction inquiry as well. *Mid-Continent Cas. Co. v. Greater Midwest Builders, Ltd.*, 307 F. Supp. 3d 1153, 1157 (D. Kan. 2018); *Luc v. Krause Werk GMBH & Co.*, 289 F. Supp. 2d 1282, 1288-89 (D. Kan. 2003). Courts consider the following factors when evaluating whether to disregard a corporate entity:

> (1) Undercapitalization of a one-man corporation, (2) failure to observe corporate formalities, (3) nonpayment of dividends, (4) siphoning of corporate funds by the dominant shareholder, (5) nonfunctioning of other officers or directors, (6) absence of corporate records, (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders, and (8) the use of the corporate entity in promoting injustice or fraud.

*Amoco Chems. Corp. v. Bach*, 567 P.2d 1337, 1341-42 (Kan. 1977). If courts find that the corporate veil should be pierced and the corporation is found subject to jurisdiction and ultimately liable, then the individuals are likewise subject to jurisdiction and liability.

**III.   ANALYSIS**

   **A.   Roberts**

Plaintiff has not met its burden to establish specific personal jurisdiction over Roberts in this forum. Plaintiff fails to show that Roberts's own personal contacts with Kansas are sufficient to constitute the "minimum contacts" required for due process. And Plaintiff fails to show that the contacts of CMI should be imputed to Roberts under a piercing-the-corporate-veil theory. The Court thus lacks personal jurisdiction over Roberts, does not reach his Rule 12(b)(6) arguments, and dismisses without prejudice the claims against him.

   **1.   Personal Contacts**

Roberts contends that he does not have sufficient contacts with the forum such that this Court can exert jurisdiction over him. Plaintiff initially responds that the Court has personal jurisdiction over Roberts based on Roberts's personal contacts with the forum at least for Count 8. The Court thus examines the quantity and quality of Roberts's personal contacts with Kansas. *OMI Holdings*, 149 F.3d at 1092. One way to do this is to apply the personal-jurisdiction standard for tort claims.[2] Plaintiff seeks application of the *Calder* "effects" test.[3] *See Calder v. Jones*, 465 U.S. 783, 789 (1984). The *Calder* "effects" test looks at whether a defendant's tortious conduct was (1) intentional, (2) expressly aimed at the forum, and (3) committed with knowledge that the brunt of the injury would be in the forum. *Eighteen Seventy, LP*, 32 F.4th at 967.

Plaintiff alleges Roberts's conduct was intentional. The Court therefore turns directly to the second element. The Court has no facts from which to infer that Roberts's actions were aimed

---

[2]   The Court questions whether Kansas recognizes a violation of the Kansas Uniform Fraudulent Transfer Act as a tort. *See Foxfield Villa Assocs., LLC v. Robben*, 449 P.3d 1210 (Kan. Ct. App. 2019). But the Court assumes it does for purposes of the personal-jurisdiction analysis.

[3]   Plaintiff bears the burden of proof and relies on the tort-based effects test. The Court therefore uses this theory to evaluate personal jurisdiction. *See Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 966 n.9 (10th Cir. 2022).

7

at the forum. Roberts participated in a videoconference with representatives of Plaintiff and CMI. He established and owned legal trust accounts in California. These accounts housed two payments from Plaintiff. Plaintiff is a Nevada Corporation with its principal place of business in Kansas. And payments were made from these accounts to Roberts's law office and an entity associated with him. Finally, Roberts showed Plaintiff's representative(s) a document purporting to demonstrate a contract with GSA. He took this action in California.

These actions are insufficient to show Roberts purposefully directed his activities at a Kansas business or Kansas itself. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (observing that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"). The actions are insignificant in both quantity and quality. Plaintiff asserts Roberts's activity of "facilitating and receiving fraudulent transfers" from the legal trust accounts brings him under the jurisdictional umbrella of Kansas. But the trust accounts were opened in California banks, and Roberts facilitated or received any transfers from the accounts in California. The sole fact connecting Roberts to Kansas is that Plaintiff's place of business is in Kansas. This is not enough. *See id.* at 288 (noting that "a plaintiff's contacts with the defendant and forum" cannot "drive the jurisdictional analysis"). There is no allegation suggesting that Kansas was the "focal point" of Roberts's allegedly tortious conduct that underlies Count 8. *Calder*, 465 U.S. at 789; *cf. Newsome v. Gallacher*, 722 F.3d 1257, 1280-81 (10th Cir. 2013) (holding that an out-of-state attorney handling an out-of-state matter does not purposefully avail himself of the client's state's laws absent additional connections).

Plaintiff does not meet the second prong of the *Calder* test, so the Court need not examine the third. Even if Plaintiff has sufficiently alleged that Roberts knew Plaintiff's primary place of business is in Kansas and that the brunt of any harm would be felt in Kansas (which is

questionable), Plaintiff must establish all three elements. Plaintiff has not done so. Plaintiff has not made a prima-facie showing of personal jurisdiction for Count 8.

### 2. Piercing the Corporate Veil

The Court thus turns to Plaintiff's alternative argument about piercing the corporate veil. Plaintiff uses this theory to show personal jurisdiction for Count 8 as well as for Counts 1-7. Plaintiff contends that many of the *Amoco* factors are present for Roberts. *See Amoco Chems. Corp.*, 567 P.2d at 1341-42. The Court disagrees. Roberts is not an owner of CMI. He is the corporation's attorney. Plaintiff does not allege Roberts actively managed the company or entered contracts or incurred debt on behalf of the company. These omissions distinguish this case from *United States v. Vernon*, 814 F.3d 1091, 1101 (10th Cir. 2016). Plaintiff uses *Vernon* to support the notion that a non-owner can be held liable as an alter ego. But *Vernon* involved a nominal owner who allowed the non-owner to dominate and control the entity. Plaintiff's allegations that Roberts incorporated CMI and that he controlled the legal trust accounts do not represent the same level of control and domination exercised by the non-owner in *Vernon*.

Plaintiff points to the depleted legal trust accounts' balances as evidence of undercapitalization. But the parties contemplated the money in the accounts would be used to fulfill CMI's contractual obligations. The balance of the legal trust accounts does not equate to Plaintiff's capitalization.

Plaintiff also suggests CMI ignored corporate formalities. But the pleadings allege only that CMI failed to produce documents Plaintiff requested. CMI is now in default. CMI's failure to respond to discovery requests about corporate formalities does not, at this stage of the case, justify a presumption that they do not exist.[4] And Plaintiff points to the following as evidence of fraud:

---

[4] Plaintiff made the document requests before adding alter-ego allegations.

(1) Roberts's receipt of payments from the legal trust accounts, (2) his statement that the trust account would only be used for "Stan's production deal"; and (3) his presentation of a forged document from GSA. All three arguments fail to demonstrate the corporate entity should be disregarded. The fact that Roberts received payments from the trust account does not suggest fraud; specifying the funds would be used for "Stan's production deal" does not limit their use to the purchase of PPE.[5] And Roberts made the statement to Depew, not to Plaintiff. Finally, Plaintiff does not allege Roberts knew the GSA document was forged.[6]

Plaintiff fails to sufficiently allege fraud on the part of Roberts that would justify disregard of the corporate entity. The actions and promises of CMI therefore cannot be used to assert specific personal jurisdiction over Roberts. Plaintiff has not established a prima-facie case that Roberts is the alter ego of CMI such that the Court can extend jurisdiction over him for Counts 1-8. Plaintiff's arguments focus too much on the merits of its claims against Roberts, and not on whether this Court can assert personal jurisdiction over him.

### 3. Jurisdictional Discovery

Plaintiff requests oral argument on Roberts's motion as well as jurisdictional discovery. The Court finds oral argument is unnecessary and would be unhelpful to the resolution of this motion. The Court further determines that jurisdictional discovery into Roberts's actions and his connections with CMI is not warranted. The Court has already conducted a preliminary injunction hearing in this case. And discovery has been ongoing since at least September 2022.[7] More

---

[5] Plaintiff rephrases Roberts's statement in its brief as "the Purchase Order 2 Account would be used solely for the purchase of the designated PPE." Doc. 86 at 11; *see also id.* at 17; 18. This is not what the second amended complaint alleges.

[6] Plaintiff alleges Brandon Culp had forged the GSA documents. Doc. 65 at 14.

[7] Roberts was included as a party in the original complaint. Plaintiff then voluntarily dismissed him without prejudice on July 11, 2022, and renamed him in the second amended complaint on December 27, 2022. But CMI has been a party since the inception. The Clerk of Court entered default against CMI on February 21, 2023.

10

importantly, Plaintiff bears the burden of demonstrating a need for jurisdictional discovery. *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 103 (10th Cir. 2012). And the Court need not recognize a general request made in response to a Rule 12(b)(2) motion. *WorldWide Ass'n of Specialty Programs & Sch. v. Houlahan*, 2005 WL 1097321, at *2 (10th Cir. 2005). A party seeking jurisdictional discovery must file a motion, explicitly supported. *Id.* Plaintiff has not done so. There is no showing that Plaintiff will suffer prejudice in the absence of additional discovery or that additional discovery will affect the outcome of this motion. *Grynberg*, 490 F. App'x at 103. The Court therefore denies Plaintiff's cursory request for jurisdictional discovery.

In sum, Plaintiff fails to make a sufficient showing that Roberts purposefully directed his actions to the state of Kansas. He is a California citizen and a California attorney for a Wyoming Corporation. His connections with Kansas are insufficient to comport with due process.[8] And Plaintiff also fails to establish a prima-facie case that Roberts is the alter ego of CMI. Plaintiff thus fails to establish personal jurisdiction over Roberts using this theory. There is no basis for asserting personal jurisdiction over Roberts. The Court grants Roberts's motion to dismiss, does not reach Roberts's Rule 12(b)(6) arguments, and dismisses without prejudice the claims against him.[9]

---

[8] The Court need not analyze whether an exercise of personal jurisdiction over Roberts would offend traditional notions of fair play and substantial justice. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999).

[9] Neither party raised the possibility of transfer. But 28 U.S.C. § 1631 requires courts to consider whether to transfer rather than dismiss without prejudice. *See Trujillo*, 465 F.3d at 1222-23. And § 1631 permits courts to sever and transfer some of the claims in an action. *FDIC v. McGlamery*, 74 F.3d 218, 222 (10th Cir. 1996). Courts have discretion in considering whether to transfer or dismiss and can consider the issue sua sponte. *Trujillo*, 465 F.3d at 1222-23. Courts evaluate whether a transfer is in the interest of justice by considering whether the new action would be time barred, whether the claims are likely to have merit, and whether the original action was filed in good faith. *Id*. at 1223 n.16. The factors weigh against transfer here. It seems the new action would not be time barred and, after a cursory review of the complaint and the Rule 12(b)(6) briefing, the Court has concerns about the merits of Plaintiff's claims against Roberts. Other factors also weigh against transfer, including the fact that neither party requested transfer or raised this issue. Transfer would also require Plaintiff to litigate this case in two separate forums. For these reasons, the Court declines to sever and transfer Plaintiff's claims against Roberts.

### B.     Depew

The Court reaches the opposite conclusion for Depew. Plaintiff has met its burden to establish a prima-facie case of specific personal jurisdiction over Depew for Count 8. Plaintiff adequately alleges Depew's own personal contacts with Kansas are sufficient to constitute "minimum contacts." The Court also finds that Plaintiff has shown that the contacts of CMI should be imputed to Depew under an alter-ego theory at this <u>early stage</u> of the case and the briefing before the Court.

### 1.     Personal Contacts

The Court first examines the quantity and quality of Depew's personal contacts with Kansas for Count 8. *OMI Holdings*, 149 F.3d at 1092. The Court again turns to the *Calder* effects test. *See Calder*, 465 U.S. at 789; *Eighteen Seventy*, 32 F.4th at 967. Like Roberts, Plaintiff alleges Depew's conduct was intentional. And the Court reasonably infers from the allegations about Depew's involvement that his actions were aimed at the forum and that Depew knew the injury would be felt in the forum. Plaintiff's allegations suggest Depew was the main point of contact between the parties. Depew participated in a videoconference with representatives of Plaintiff and CMI. He repeatedly communicated with Plaintiff about shipment deliveries. The content of the emails demonstrates Depew knew Kansas was a potential delivery site. And entities he is associated with received significant payments from one of the legal trust accounts in California. This account was funded by a payment from Plaintiff. Again, Plaintiff is a Nevada corporation with its principal place of business in Kansas.

These actions are sufficient to show Depew purposefully directed his activities at a Kansas business and Kansas itself. *See Walden*, 571 U.S. at 285. Most significantly, the allegations suggest that Depew was the key communicator with Plaintiff. Plaintiff repeatedly asked him questions

about the transactions and expected delivery dates, and Depew responded with substantive information multiple times. The interactions between Depew and Plaintiff were significant in both quantity and quality. And Plaintiff alleges that Depew initiated, received, and benefited from fraudulent transfers from the legal trust account. Depew's role and actions bring him under the jurisdictional umbrella of Kansas. Plaintiff alleges more about Depew and his actions than the mere fact that Plaintiff's place of business is in Kansas.

Depew focuses his arguments on the alleged fraudulent transfers themselves and not Depew's other involvement in CMI's business. He cites *Eighteen Seventy* in support of his position that even receipt of a fraudulent transfer does not justify the exercise of jurisdiction over a non-resident defendant. But the action against Depew is not only about allegedly fraudulent transfers. Plaintiff seemingly attempts to bring Depew into all of its claims against CMI by piecing the corporate veil. This renders relevant all of his actions related to Plaintiff. And *Eighteen Seventy* is distinguishable on its facts.

In *Eighteen Seventy*, the Tenth Circuit considered whether a Wyoming court had personal jurisdiction over Richard Jayson, the co-founder and CFO of CRUPE Pte. Ltd. ("CRUPE"). The plaintiffs, Eighteen Seventy, LP and the Marie Kennedy Foundation (the "Kennedy Entities"), lost more than $10 million in CRUPE investments. CRUPE is a foreign company managed in Switzerland. Jayson is a resident of the United Kingdom. The Kennedy Entities have principal places of business in Wyoming. The Entities are owned by three brothers, one of whom is a Florida resident and two of whom are Wyoming residents. Jayson met with representatives of the plaintiffs several times outside of the United States and communicated with the brothers by phone and email. He was copied on some emails that mentioned Wyoming. He also copied one of the Wyoming brothers on a few email responses to the Florida brother.

The Tenth Circuit held the court lacked personal jurisdiction over Jayson because his efforts to induce investments were "geographically undirected." *Eighteen Seventy*, 32 F.4th at 975. Jayson's activities related to the Kennedy Entities and Wyoming can fairly be summarized as this: (1) he prepared allegedly fraudulent documents before the Kennedy Entities got involved; (2) he prepared the documents for and solicited investments from many entities worldwide, not just the Kennedy Entities; (3) he was involved in emails with the Kennedy brothers, but many times he was merely copied; and (4) he met with one of the Wyoming brothers in foreign countries over the course of three years. There was no evidence from which to reasonably infer that Jayson expressly aimed his activities at Wyoming.

Here, in contrast, the Court only has allegations of Depew meeting and communicating with representatives of a Kansas business. There are no allegations of a broader, worldwide scope of fraudulent activity. His solicitations and allegedly fraudulent transfers targeted a Kansas business. There is a reasonable inference that he was the primary communicator with Plaintiff. And the contact between the parties was over a condensed time period (much less than three years). Depew's cursory citation of *Eighteen Seventy* does not convince the Court that personal jurisdiction would offend due process under the circumstances of this case.

There is a second step to the specific personal-jurisdiction inquiry. Ordinarily a court would next examine whether the defendant shows that exercising jurisdiction would violate traditional notions of fair play and substantial justice. But Depew does not raise this issue or make any arguments about it. The burden is on Depew at this step of the analysis, and he fails to meet that burden. The Court denies his motion to dismiss based on lack of personal jurisdiction for Count 8.

## 2. Piercing the Corporate Veil

This leaves the piercing-the-corporate-veil allegations for personal jurisdiction on the remaining claims (and as an alternative basis for Count 8). Neither party analyzes this issue on a claim-by-claim basis and instead argues it globally. They also argue it more under Rule 12(b)(6) rather than Rule 12(b)(2). But the Second Amended Complaint seeks to hold Depew personally liable for any judgment against CMI, so the only plausible reading of the pleadings is that Plaintiff uses the piercing-the-corporate-veil premise for personal jurisdiction for these contract-based and/or tort-based claims.

The Court again turns to the *Amoco* factors. *Amoco Chems. Corp.*, 567 P.2d at 1341-42. Depew focuses on the fact that he is not an owner of CMI, making it unlikely the doctrine will apply because it is difficult to establish that a nonowner exerts domination and control over a corporation. Depew also emphasizes courts' reluctance to disregard corporate entities. *See Mr. Cinnamon of Kan., Inc. v. Hall*, 202 P.3d 734, 740 (Kan. Ct. App. 2009). Depew centers his argument on the allegedly fraudulent transfers to show that Plaintiff fails to adequately allege he was acting as an alter ego.

But Plaintiff's allegations address several of the other factors, including siphoning of corporate funds, the use of the corporation as a façade, and use of the corporate entity in promoting injustice or fraud. Plaintiff alleges Depew was intimately involved in these activities, serving as the primary communicator on behalf of CMI. Frankly, the fact that Plaintiff was not a co-owner gives the Court some pause. And the Court is mindful that courts are cautious and reluctant to pierce the corporate veil. *Amoco Chems. Corp.*, 567 P.2d at 1341. The Court questions whether the evidence will ultimately show a level of involvement by Depew that justifies piercing the corporate veil. Plaintiff faces an uphill battle to show that Depew's involvement reached the level

of dominating and controlling CMI. *See Vernon*, 814 F.3d at 1102. But for now, the allegations are adequate to support a prima-facie showing of personal jurisdiction (and, relatedly for the Rule 12(b)(6) arguments, a plausible theory) that Depew controlled CMI to such a level that could render him liable for the actions of the corporation. The Court finds that Plaintiff has satisfied its personal-jurisdiction burden at this stage and denies that portion of Depew's motion.

### 3.      Failure to State a Claim

Depew contends Plaintiff fails to plausibly allege Count 8 against him because he is not a proper party to the KUFTA fraudulent transfer claim as a matter of law. KUFTA offers creditors an avenue to avoid transfers that were made with intent to "hinder, delay or defraud a creditor." K.S.A. § 33-204(a)(1). Courts typically look for so-called "badges of fraud" to determine whether transfers were made for improper purpose. *Id.* § 33-204(b) (identifying non-exclusive list of factors); *In re Shore*, 305 B.R. 559, 567 (Bankr. D. Kan. 2004). Fraudulent intent may be shown when one or more badges of fraud are present. *In re Taylor*, 133 F.3d 1336, 1339 (10th Cir. 1998).[10]

Plaintiff does not allege that Depew, individually, received any of the allegedly fraudulent transfers. Depew contends that Plaintiff therefore fails to state a claim because the only cause of action under KUFTA is against the transferee or transferor, not third parties. But Plaintiff alleges Depew was a transferor, a transferee, and a beneficiary.[11] And the text of KUFTA provides that a "judgment may be entered against: [t]he first transferee of the asset or the person for whose benefit the transfer was made . . . ." K.S.A. § 33-208(b)(1). Plaintiff alleges Depew was a Senior Executive Vice President of Aftermaster, Inc., the recipient of twenty payments from the first trust account

---

[10] Depew does not argue about Plaintiff's status as a creditor or the existence of the badges of fraud. The Court does not address them further here. But both elements of a KUFTA claim may ultimately pose difficulty for Plaintiff.

[11] Depew denies that Plaintiff alleges Depew was a transferor. Plaintiff did not overtly make such allegation. But Plaintiff alleges Depew was the treasurer/fiscal agent for CMI, suggesting he was involved with transactions in and out of the trust account.

totaling $581,300. Plaintiff also alleges two payments totaling $105,000 from the same trust account were made to counsel for Aftermaster. And Plaintiff alleges $64,000 was paid to Cowboy MD LLC, an entity controlled by Depew. Depew's connections to these entities may ultimately be minimized or disproven, but Plaintiff has stated a plausible claim that Depew was either a transferor, transferee, or a beneficiary.[12,13]

Finally, the Court has already noted that Count 9 is a theory of liability and not a substantive claim for relief. Depew moves for dismissal. But dismissal is not appropriate because it's not a claim. Plaintiff may proceed <u>for now</u> with the piercing-the-corporate-veil theory for the reasons given in the Court's personal-jurisdiction analysis. Plaintiff has plausibly alleged the theory against Depew.

## IV. CONCLUSION

Plaintiff has not established a prima-facie showing of personal jurisdiction over Roberts, so the Court grants his motion and dismisses without prejudice the claims against him. Conversely, Plaintiff has established a prima-facie showing of personal jurisdiction over Depew. And Depew has not shown he is entitled to dismissal of Plaintiff's claims for failure to state a claim.

THE COURT THEREFORE ORDERS that Roberts's motion to dismiss (Doc. 80) is GRANTED. The claims against Roberts are DISMISSED WITHOUT PREJUDICE.

---

[12] The cases Depew cites to support his position that he was neither a transferee nor a beneficiary are inapposite. They relate more to Depew's role as transferor as opposed to transferee or beneficiary. *See, e.g.*, *Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*, 2004 WL 771230, at *13-*14 (S.D. Ind. 2004) (discussing the term beneficiary under the Bankruptcy Act but finding no accessory liability under the IUFTA); *Freeman v. First Union Nat. Bank*, 865 So. 2d 1272, 1275-76 (Fla. 2004) (finding no liability for aiding and abetting fraudulent transfer under the FUFTA); *see also Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 203 (Del. Ch. 2006) ("Despite the breadth of remedies available under state and federal fraudulent conveyance statutes, those laws have not been interpreted as creating a cause of action for 'aiding and abetting.'").

[13] The Court does not determine whether KUFTA provides relief against all three (transferor, transferee, or beneficiary). It is enough at this stage of the case that Plaintiff alleges facts suggesting that Depew acted in all three roles.

17

THE COURT FURTHER ORDERS Depew's motion to dismiss (Doc. 83) is DENIED.

IT IS SO ORDERED.

Dated: July 7, 2023	/s/  *Holly L. Teeter*
	HOLLY L. TEETER
	UNITED STATES DISTRICT JUDGE